# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

JORDAN C. CERIO,

                                   Plaintiff,

           - v -                                      Civ. No. 5:14-CV-875
                                                            (DJS)[1]
CAROLYN W. COLVIN, *Acting Comm'r of
Soc. Security*,

                                   Defendant.


**APPEARANCES:**                              **OF COUNSEL:**

OLINSKY LAW GROUP                             HOWARD D. OLINSKY, ESQ.
Attorney for Plaintiff
300 S. State Street
5th Floor, Suite 520
Syracuse, New York 13202

SOCIAL SECURITY ADMINISTRATION                KRISTINA COHN, ESQ.
Attorney for Defendant
Office of Regional General Counsel
Region II
26 Federal Plaza – Room 3904
New York, New York 10278

**DANIEL J. STEWART**
**United States Magistrate Judge**

---

[1] On November 7, 2014, with the consent of the parties, the Honorable Gary L. Sharpe, then-Chief United States District Judge, referred the matter to this Court to exercise full jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. *See* Dkt. No. 9.

## MEMORANDUM-DECISION and ORDER

Plaintiff Jordan Cerio brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, claiming that the Commissioner of Social Security improperly denied his application for Supplemental Security Income ("SSI"). For the reasons that follow, this Court upholds the Commissioner's decision denying Social Security benefits.

## I. BACKGROUND

### A. Facts

Jordan Cerio was born on November 16, 1987, and was twenty-five years old at the time of the alleged onset disability date of January 24, 2012. Dkt. No. 8, Admin. Transcript [hereinafter "Tr."], at pp. 26-27. According to his mother, Plaintiff was adopted at twelve months of age and because of complications at birth, including hypoxia and the need for resuscitation and intubation, she was advised that her son would likely become learning disabled. Tr. at p. 307. Plaintiff attended school, but as a result of his learning disabilities, he was required to receive resource services and was enrolled in special education classes. Tr. at pp. 48, 291-97 & 307.

In 2004, Plaintiff was administered the Wechsler Intelligence Scale for Children (WISC–IV) as part of his Independent Education Program ("IEP"). Tr. at pp. 287-89. His IQ (71); verbal comprehension (79); and perceptual reasoning (75) were all

classified as borderline. Tr. at p. 288. His working memory was seen as deficient and his processing speed was low average. *Id*. His scaled score for short-term auditory memory was 2 out of 10. *Id*.

Plaintiff was seen in 2004 by Patricia Sly, the school psychologist, who opined that the then sixteen-year-old was functioning with a borderline range of intellectual ability and was learning disabled. Tr. at pp. 286 & 289. His strengths included long-term auditory memory, possession of a fund of general knowledge, and attention to visual details. Tr. at p. 286. His cognitive defects at that time included a lack of practical judgment and common sense reasoning; visual motor coordination; and short-term auditory memory and immediate vision recall, all of which resulted in his expressive language skills being significantly delayed. *Id*. With regard to reading comprehension, he was occasionally able to decode enough words to decipher, using context clues, the meaning of the sample passage, but he was unable to draw conclusions or make inferences as required. *Id*.

Plaintiff was provided the assistance he needed to successfully complete school and graduate with an IEP degree. Tr. at pp.48 & 290-97. That assistance included having parts of his exams to read to him. Tr. at pp. 48 & 73. With that aid, he passed,

and in some cases did well in, English, Social Studies, and Mathematics. Tr. at p. 290.[2] Upon graduation from high school, Plaintiff was admitted to Northwestern University in Ohio. However, he withdrew after approximately one week when he concluded that he was not going to be provided with the level of assistance that would allow him to pass. Tr. at p. 49. There also may have been some component of homesickness involved in the decision to withdraw. *Id.*

Upon his return from college, Mr. Cerio resided with his parents. Tr. at pp. 52 & 246. Plaintiff's work history is admittedly sporadic, and his most sustained work was at Vanguard, where he was employed detailing cars. Tr. at pp. 50-51. He was let go after six months as his employer determined that Cerio was not working fast enough. *Id.* He attempted to obtain other work by filling out and submitting over one hundred applications, but received only one interview and was not called back. Tr. at p. 67.

On the other hand, the evidence before the Administrative Law Judge ("ALJ") established that Plaintiff remained active and engaged. He cared for his toddler-aged nieces; mowed the lawn and shoveled snow; socialized with friends; used Facebook; texted; played  role playing computer games; built model cars; did car repairs, such as oil changes and a brake job; engaged in activities of daily living, including cooking his

---

[2] It is important to note, however, that the grades reflected in his transcript were within the confines of the special education classes, and were scored within that curriculum. Tr. at p. 71.

own meals and doing chores; and obtained his driver's license and drove his parents to various locations. Tr. at pp. 54-55, 58, 247-51, 332, & 365.

## B. Mental Health

Plaintiff's background and the school assessment by Psychologist Patricia Sly are discussed above. On February 23, 2012 a psychiatric consultive examination was performed by Dr. Jeanne Shapiro; Plaintiff was twenty-four years-old at that time.    Tr. at pp. 330-33. It was noted that while Plaintiff had learning problems, he did not report any significant depression, manic symptoms, nor anxiety related symptoms.    Tr. at p. 331. At the exam, his manner of relating, social skills, speech, and presentation were adequate, his thought processes were coherent, and his attention and concentration were intact. Tr. at pp. 331-32. However, his intellectual functioning was "estimated to be deficient." Tr. at p. 332. The conclusions reached by Dr. Shapiro were summarized as follows:

> Vocationally, the claimant appears to be capable of understanding and following simple instructions and directions if no reading is required to do so. He appears to be capable of performing simple tasks with supervision and perhaps some independently. He appears to be capable of maintaining attention and concentration for tasks. He can regularly attend to a routine maintain a schedule. He appears to be capable of learning some rote tasks. He appears to be capable of making appropriate decisions. He appears to be able to relate to and interact moderately well with others. He appears to be capable of dealing with stress. Results of the examination suggest no significant psychiatric problems.

*Id.*

It was recommended that Mr. Cerio consider vocational training and job coaching, but no evidence was presented that he ever did so. Tr. at pp. 47 & 333.

The state psychiatrist, Dr. R. Altmansberger, performed a psychiatric review on March 8, 2012. Tr. at pp. 339-55. He concluded that Plaintiff had a medically determinable impairment that did not precisely satisfy the listed criteria for Listing § 12.02. Tr. at p. 340. Specifically, Dr. Altmansberger concluded that Plaintiff had mild restrictions of activities of daily living and difficulties maintaining social functioning, moderate difficulties in maintaining concentration, persistence, and pace, and no episodes of deterioration of extended duration. Tr. at p. 349. There was no evidence of any "C" criteria. Tr. at p. 350. As part of his review, Dr. Altmansberger assessed Plaintiff's mental residual functional capacity. Tr. at pp. 353-55. In the category of Understanding and Memory, Dr. Altmansberger found that Plaintiff was "not significantly limited" in his abilities to remember locations and work-like procedures nor in his ability to understand and remember very short and simple instructions. Tr. at p. 353. However, he found Plaintiff was moderately limited in his ability to understand and remember detailed instructions. *Id*. In the category of Sustained Concentration and Persistence, Dr. Altmansberger determined that Plaintiff was not significantly limited in his ability to carry out very short and simple instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular

attendance, be punctual within customary tolerances, and to work in coordination with or proximity to others without being distracted by them. *Id*. Plaintiff was assessed to be moderately limited in his ability to carry out detailed instructions, sustain an ordinary routine without special supervision, complete a normal workday and workweek without interruptions from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods. Tr. at pp. 353-54. Dr. Altmansberger determined that Plaintiff had no significant limitations in the categories listed under Social Interaction. Tr. at p. 354. And, in the category of Adaptation, Dr. Altmansberger determined that Plaintiff had no significant limitations in his abilities to be aware of normal hazards and take appropriate precautions and to travel in unfamiliar places or use public transportation; Plaintiff was deemed to be moderately limited in his abilities to respond appropriately to changes in the work setting and to set realistic goals or make plans independently of others. *Id*. Dr. Altmansberger concluded that Plaintiff "appears capable of performing simple tasks, maintaining [attention, concentration,] and a schedule, can learn new tasks, can make decisions, relate with others and deal with stress. Claimant is capable of working at a simple job. Tr. at p. 355.

Shortly after the October 4, 2012 Hearing with the ALJ, Plaintiff was seen by psychologist Dr. Stephen Coleman at the request of his counsel for the preparation of an evaluation report. Tr. at pp. 45 & 363-71. As part of the evaluation report, Dr. Coleman

noted "[a] rather striking aspect of Mr. Cerio's presentation is his rather hesitant, almost stammering approach to expressive language, and at times he appears to be struggling quite significantly in order to adequately project his thoughts internally." Tr. at p. 365. Dr. Coleman noted that Plaintiff's IQ is borderline, his verbal comprehension is average, and his visual perception is slightly below average. Tr. at p. 366. His working memory index, however, was only in the 1st percentile, 63, and his processing speed index was 65. *Id.* In his summary and recommendations, Dr. Coleman states as follows:

> Mr. Cerio . . . attained an overall borderline general intelligence range of functioning, with a quite unusual pattern of strengths and disabilities/ "peaks and valleys" in this test protocol, ranging from solidly average attainments and vital <u>verbal skills,</u> but also Mr. Cerio is <u>markedly challenged</u> by other vital skills assessed. For example, short-term memory and psychomotor speed are the probable reasons for his lack of success in his other jobs, and these to deficits are clearly seen in the type of cognitive assessment performed currently. Given Mr. Cerio's major challenges in this area, as well as in some visual perceptual areas of functioning, and being extremely limited by numerical, money management, and language arts skills deficiencies, Mr. Cerio is clearly challenged in obtaining meaningful and gainful employment on a full-time basis. . . . Specifically, relating to work expectations, Mr. Cerio would be very challenged to maintain a consistent pace in terms of productivity, and to sustain an ordinary routine without special supervision, given his various disabilities described, and indeed would have difficulties in remembering and probably carrying out even very short and simple instructions relating to routine and sedentary tasks.

Tr. at p. 367 (emphasis in original).

Dr. Coleman further opined that it was

> very understandable that a previous psychologist evaluating Mr. Cerio would point to vocational training and job coaching as specific supports for

Mr. Cerio . . . and it is very likely within the long-term future. . . . He is indeed seen as disabled and was apparently eligible for such a program in the past, and there is no current compelling reason why he would not be continued to be considered as a candidate for this type of supportive employment.

*Id.*

## C. Physical Health

Plaintiff has had some history of right knee pain, obesity, and hypertension. Tr. at p. 324. On January 12, 2011, Mr. Cerio saw Dr. Vigliotti at Onieda Health Care complaining of knee pain. *Id.* At that time his weight was 268 pounds, down ten pounds from the last visit. *Id.* He had physical therapy on the knee in 2010 and was complaining of a recent reoccurrence of right knee pain, but his examination was essentially normal. *Id.* Plaintiff saw Dr. Vigliotti again in September 2011, as a follow-up and in connection with his disability application. The doctor noted specifically that Plaintiff had no physical limitations. Tr. at p. 325 ("I think he is going to have a tough time getting full disability especially without any physical limitations.").

Plaintiff also saw Dr. Vigliotti on August 13, 2012, with regard to his history of high blood pressure and obesity. Tr. at p. 362. His blood pressure at the beginning of the exam was 130/80, but it was retested and came back as normal. *Id.* He was referred for blood work and diabetic testing, and his HbA1c was 5.4%, which was less than the 7% the ADA recommends for treatment. Tr. at p. 360. At the August 2012 exam, he was six-feet tall and weighed 274 pounds. Weight loss was encouraged. *Id.*

## D. Procedural History

Plaintiff initially applied for child insurance benefits and SSI in June of 2007. Tr. at p. 81. At that time, the alleged onset disability date was November 16, 1987. *Id.* The claim was denied in September 2007. *Id.* A hearing was held, and ALJ Edward Pitts concluded that Plaintiff was not disabled pursuant to sections 223(d) and 1614(a)(3)(A) of the Social Security Act. Tr. at pp. 81-89. That decision was never appealed and therefore became final. Tr. at pp. 26-27.

Thereafter, the present applications for child disability and SSI benefits were filed on January 24, 2012. Tr. at p. 235. The applications included an onset disability date of January 31, 2009, Tr. at p. 235, but that was orally amended at the hearing to conform to the date of the application – January 24, 2012, Tr. at p. 43. Plaintiff's applications were denied initially on March 9, 2012. Tr. at p. 100. A hearing was thereafter held, and subsequently ALJ Robert Gonzalez found that Plaintiff was not disabled.[3] Tr at pp. 26-35. That ruling was then reviewed by the Appeals Council, which adopted the ALJ's findings, with some modification, on June 24, 2014. Tr. at pp. 1-8. Exhausting all of his options for review through the Social Security Administration tribunals, Plaintiff now brings this timely appeal.

---

[3] With regard to the application for child benefits, the ALJ noted that the previous determination on Plaintiff's 2007 application had *res judicata* effect, thus precluding review of the 2012 application. Tr. at pp. 26-27.

## II. DISCUSSION

### A. Standard of Review

Under 42 U.S.C. § 405(g), the proper standard of review for this Court is not to employ a *de novo* review, but rather to discern whether substantial evidence supports the Commissioner's findings and that the correct legal standards have been applied. *See Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *Urtz v. Callahan*, 965 F. Supp. 324, 325-26 (N.D.N.Y. 1997) (citing, *inter alia*, *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). Succinctly defined, substantial evidence is "more than a mere scintilla," it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938).

The ALJ must set forth the crucial factors supporting the decision with sufficient specificity. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). Where the ALJ's findings are supported by substantial evidence, the court may not interject its interpretation of the administrative record. *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); 42 U.S.C. § 405(g). Where the weight of the evidence, however, does not meet the requirement for substantial evidence, or where a reasonable basis for doubt exists as to whether the correct legal principles were applied, the ALJ's decision may not be affirmed. *Johnson v. Bowen*, 817 F.2d at 986.

## B. Determination of Disability

The SSI program, 42 U.S.C. § 1381, *et seq.*, is a federal program providing benefits to needy aged, blind, or disabled individuals who meet the statutory income and resource limitations. 20 C.F.R. § 416.110. The SSI program was designed to replace the former federally assisted state welfare programs for the aged, blind, or disabled. *Id.* While the SSI program has special eligibility requirements that relate to establishing need,[4] the requirements for establishing disability, found at 42 U.S.C. § 1382c, are identical to the requirements under Title II of the Social Security Act for entitlement to disability insurance benefits. *See* 42 U.S.C. § 423(d). Therefore, the vast case law interpreting the disability provisions under Title II may be relied upon in this case. *See Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (noting that decisions under Titles II and XVI are cited interchangeably).

To be considered disabled within the meaning of the Social Security Act, a plaintiff must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). Furthermore, the

---

[4] SSI benefits may not be paid unless the claimant meets the income and resource requirements of 42 U.S.C. §§ 1382a, 1382b, and 1382c(a)(3)(A).

claimant's physical or mental impairments must be of such severity as to prevent engagement in any kind of substantial gainful work which exists in the national economy. *Id*. at § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner follows a five-step analysis set forth in the Social Security Administration Regulations. 20 C.F.R. § 416.920. At Step One, the Commissioner "considers whether the claimant is currently engaged in substantial gainful activity." *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). If the claimant is engaged in substantial gainful activity, he or she is not disabled and the inquiry ends. 20 C.F.R. § 416.920(b). If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to Step Two and assesses whether the claimant suffers from a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. *Id.* at § 416.920(c). If the claimant suffers from a severe impairment, the Commissioner considers at Step Three whether such impairment(s) meets or equals an impairment listed in Appendix 1, in Part 404, Subpart P of the Regulations. *Id*. at § 416.920(d). The Commissioner makes this assessment without considering vocational factors such as age, education, and work experience. *Berry v. Schweiker*, 675 F.2d at 467. Where the claimant has such an impairment the inquiry ceases as he or she is presumed to be disabled and unable to perform substantial gainful activity. *Id*. If the claimant's impairment(s) does not meet

or equal the listed impairments, the Commissioner proceeds to Step Four and considers whether the claimant has the residual functional capacity (RFC)[5] to perform his or her past relevant work despite the existence of severe impairments. 20 C.F.R. § 416.920(e). If the claimant cannot perform his or her past work, then at Step Five, the Commissioner considers whether the claimant can perform any other work available in the national economy. *Berry v. Schweiker*, 675 F.2d at 467; 20 C.F.R. § 416.920(g)(i).

Initially, the burden of proof lies with the claimant to show that his or her impairment(s) prevents a return to previous employment (Steps One through Four). *Berry v. Schweiker*, 675 F.2d at 467 (citing *Jock v. Harris*, 651 F.2d 133, 135 (2d Cir. 1981)). If the claimant meets that burden, the burden then shifts to the Commissioner at Step Five to establish, with specific reference to medical evidence, that the claimant's physical and/or mental impairment(s) are not of such severity as to prevent him or her from performing work that is available within the national economy. *Id*.; 42 U.S.C. § 423(d)(2)(A); *see also White v. Sec'y of Health and Human Servs.*, 910 F.2d 64, 65 (2d Cir. 1990). In making this showing at Step Five, the claimant's RFC must be considered along with other vocational factors such as age, education, past work experience, and transferability of skills. 20 C.F.R. § 416.920(g); *see Draegert v. Barnhart*, 311 F.3d 468

---

[5] "Residual functional capacity" is defined by the Regulations as follows: "Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting. Your residual functional capacity is the most you can still do despite your limitations." 20 C.F.R. § 416.945(a)(1).

(2d Cir. 2002); *see also State of N. Y. v. Sullivan*, 906 F.2d 910, 913 (2d Cir. 1990).

## C. ALJ Gonzalez's Findings

Using the five-step disability evaluation, the ALJ found that: 1) Jordan Cerio had not engaged in any substantial gainful activity since January 24, 2012, the alleged onset date; 2) he had severe medically determinable impairments, namely, learning disabilities, borderline intellectual functioning, high blood pressure, and obesity; 3) his severe impairments do not meet nor medically equal any impairment listed in Appendix 1, Subpart P of Social Security Regulation Part 404; 4) he retained the RFC to perform a full range of work at all exertional levels, but with the following non-exertional limitations: "he would be restricted to understanding, remembering, and carrying out no more than unskilled work which would include following simple routine tasks, and being able to read short 3 to 4 word instructions; and responding appropriately to supervision, coworkers, and usual work situations plus dealing with changes in routine work setting"; and accordingly could not perform any past relevant work; but 5) considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform. Tr. at pp. 26-35. Therefore, ALJ Gonzalez determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from January 24, 2012 through the date of the decision. Tr. at p. 35.

The matter was then reviewed by the Appeals Council, which agreed that Mr. Cerio had not engaged in substantial gainful activity since January 24, 2012; that he has severe impairments, which do not meet nor equal in severity any impairment in the Listing of Impairments; he is not capable of performing past relevant work; and a finding of "not disabled" is appropriate under the framework of section 204.00 in the Medical-Vocational Guidelines (the "Grids"). Tr. at pp. 4-5. With regard to Plaintiff's impairments, however, the Appeals Council concluded that the ALJ was incorrect when he concluded that the Plaintiff's high blood pressure and obesity constituted severe impairments. Tr. at p. 5. In light of the testimony in the record that the claimant's activities were not in any way limited by his weight or high blood pressure, the Appeals Council concluded that these conditions do not have more than a minimal impact on Cerio's ability to perform basic work activities and are, therefore, non-severe impairments. *Id.*

### D. Plaintiff's Contentions

In a comprehensive Brief, Plaintiff contends that the Commissioner's decision should be reversed because: 1) the ALJ erred in evaluating the opinions from the consultive examiners, and therefore his RFC determination is not supported by substantial evidence; 2) the ALJ's credibility determination was not supported by substantial evidence; and 3) the ALJ's Step Five determination was not supported by

medical evidence and the ALJ should have consulted with a vocational expert ("VE").

Dkt. No. 12, Pl.'s Br., at pp. 10-22. The Court will consider each of these contentions

separately.

## E. Evaluation of Medical Opinions and the RFC Finding

The ALJ is required to assess a claimant's RFC and determine at Step Four

whether such RFC precludes the performance of his or her past relevant work. 20 C.F.R.

§ 416.920(e). If it is determined that it does, then as a final matter, the agency must

examine whether the claimant can do any other work. *Id*. Essentially, the RFC is an

assessment of "what an individual can still do despite his or her limitations." *Melville*

*v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting Social Security Ruling 96-8p, 1996 WL

374184, at *2, *Policy Interpretation Ruling Titles II and XVI: Assessing Residual*

*Functional Capacity in Initial Claims* (S.S.A. 1996)). "Ordinarily, RFC is the

individual's maximum remaining ability to do sustained work activities in an ordinary

work setting on a regular and continuing basis, and the RFC assessment must include a

discussion of the individual's abilities on that basis. A 'regular and continuing basis'

means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.* When

making the RFC determination, the ALJ considers a claimant's physical abilities, mental

abilities, and other limitations that could interfere with performing work activities on a

regular and continuing basis. 20 C.F.R. § 416.945(a)-(c). An RFC finding will be

upheld where there is substantial evidence in the record to support each requirement listed in the Regulations. *See LaPorta v. Bowen*, 737 F. Supp. 180, 181. (N.D.N.Y 1990).

Here, the ALJ reviewed the medical evidence in determining Cerio's RFC, and assessed different weights to each doctor's opinion. Tr. at pp. 33-34. In particular, ALJ Gonzales gave great weight to the opinion of Dr. Altmansberger; gave some weight to the opinion of Dr. Shapiro; and gave little weight to the opinion of Dr. Coleman. *Id.* The ALJ afforded significance to the fact that Dr. Altmansberger is an agency doctor with expertise in mental health. Tr. at p. 33. Conversely, the ALJ discounted the significance of Dr. Coleman's opinion because he valuated Mr. Cerio only for the purpose of preparing a report and because his opinions conflicted with substantial evidence in the record. *Id.* While Plaintiff objects to this assignment of significance, as correctly noted by Defendant, conflicts in the medical evidence are for the Commissioner to resolve. Dkt. No. 13, Def.'s Br., at pp. 12-18. *Veino v. Barnhart*, 312 F. 3d 578, 588 (2d Cir. 2002) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971)). Notably, the treating physician rule does not apply in this case as the Plaintiff had no treating physician other than Dr. Vigliotti, who only addressed Plaintiff's physical ailments and concluded he had no physical limitations. Tr. at pp. 320-25. Therefore the issue for the Court is not whether it would assign the same significance to the medical opinions, but rather whether

the conclusion of the ALJ was supported by substantial evidence, considering the length of the treatment relationship; the nature and extent of treatment; the degree to which the physician's opinion is supported by relevant evidence; and other factors. 20 C.F.R. 416.927(c)(2)-(6).

Plaintiff argues that the ALJ should have accepted Dr. Coleman's opinion that Plaintiff was seriously limited with respect to the mental abilities needed to do unskilled work, and in particular in the following categories: remembering work-like procedures; understanding and remembering very short and simple instructions; maintaining attention for a two-hour segment; maintaining regular attendance and being punctual within customary, usually strict tolerances; sustaining an ordinary routine without special supervision; and performing at a consistent pace without an unreasonable number and length of rest periods. Dkt No. 12, Pl.'s Br., at pp. 12-18. The Commissioner disputes that the record in the case, and in particular the prior activities of Plaintiff, support Dr. Coleman's opinions, and asserts that the record is consistent with the findings of Dr. Altmansberger. Dtk. No. 13, Def.'s Br., at pp. 5-9. In particular, the Defendant notes and the record reflects that despite the severe limitations indicated by Dr. Coleman, Mr. Cerio was able to graduate from high school and be accepted at college; to participate in community plays in which he had speaking/singing roles; was able to obtain his driver's license and drive himself and his parents as well as utilize the GPS system on

his phone; could take care of his toddler-aged nieces; provide for his dog; shovel snow, garden, and mow the lawn; could engage in automotive repair; was able to utilize a computer or similar device to play computer games and to text and use Facebook to communicate with his friends; could build model cars; make meals and perform chores; and could assist his father in doing simple accounting tasks, such as filling out his father's client's W-2 forms. *Id.*; Tr. at pp. 48-76, 237, 239, 247, & 298. Defendant also correctly notes Dr. Coleman's opinion regarding Plaintiff's inability to do unskilled work was contradicted by the reports of Drs. Altmansberger and and Shapiro. Tr. at pp. 6-7. Dr. Shapiro assessed that Plaintiff could follow simple directions; perform simple tasks with supervision and perhaps some independently; maintain attention and concentration for task; make appropriate decisions; and relate and interact moderately well with others and was capable of dealing with stress. Tr. at p. 332. "The basic mental demands of competitive, remunerative, unskilled work include the ability (on a sustained basis) to understand, carry out and remember simple instructions; respond appropriately to supervision, co-workers and usual work situations; and to deal with changes in a routine work setting." Social Security Ruling 85-15, 1985 WL 56857, *Program Policy Statement Titles II and XVI: Capability to do Other Work – The Medical-Vocational Rules as a Framework for Evaluating Solely Non-Exertional Impairments* (S.S.A. 1985).

While not specifically addressing the conflicts in the Dr. Shapiro's and Dr. Coleman's opinions, Plaintiff correctly notes that there is a conflict between the RFC and Dr. Shapiro's February 2012 report. Dkt. No. 12, Pl.'s Br., at p. 17 n.6. In particular, the RFC indicates that Plaintiff would be able to follow simple routine tasks and be able to read short three-to-four word instructions. Tr. at p. 32. Dr. Shapiro noted in her report that Plaintiff could "[follow] simple instruction and directions *if no reading is required to do so.*" Tr. at p. 332 (emphasis added). During that examination, and repeated at the hearing, Plaintiff relayed that he was unable to be employed because his reading and writing skills are poor. Tr. at pp. 69 & 330. Plaintiff maintains that this conflict requires a remand. Dkt. No.12, Pl.'s Br., at pp. 17-18. The Court disagrees.

In his disability application, Plaintiff did not claim that he was illiterate, but did state that he could only read and write at a first grade level. Tr. at p. 250. Further, Plaintiff notes that while he can follow spoken instructions, he cannot follow written ones. Tr. at p. 253. Therefore, due to his poor reading and writing skills, Plaintiff maintains that he was unable to keep a job. Tr. at p. 330. A reading comprehension test was performed by the School Psychologist, Patricia Sly, in 2004. Tr. at p. 286. In that examination she concluded that Cerio could decipher the text, but was unable to draw conclusions or make inferences as required. *Id.* At the disability hearing, however, the following question was asked and answered:

Q.    What about like short instructions, for example if there is a string of easy words like pick up this book and move it to the other room, would you be able to read something like that?

A.    I could read it with some difficulty.

Tr. at p. 63.

Plaintiff further acknowledges that he can read and write, although with some limitations. Tr. at pp. 52-3, 62-3, 239, & 251. Plaintiff also acknowledges that he texts and Facebooks with his friends, a process that would involve reading and writing; and that he filled out W-2 forms and applications, thus providing support for the ALJ's RFC determination. Tr. at pp. 52-54 & 247.

The Court concludes that the ALJ was within his discretion to credit the conclusions of the agency doctor, and to give little weight to Dr. Coleman, whose opinion that Plaintiff was seriously limited in remembering work-like procedures, understanding and remembering short and simple instructions, maintaining attention for a two-hour segment, and in sustaining an ordinary routine without special supervision, was felt to be contradicted by the proof of activities that Plaintiff had already engaged in.

## F.  The ALJ's Credibility Determination

As part of his decision, ALJ Gonzalez noted that Plaintiff exhibited no debilitating symptoms at the one-hour hearing and was able to concentrate and stay on point. Tr. at p.33. A review of the transcript reveals appropriate responses to questions.  Tr at p. 40-

76. Plaintiff objects to the ALJ's conclusions in this regard, noting that the ALJ has no particular expertise in mental capacity issues. Dkt. No. 12, Pl.'s Br., at p. 20. However, it is not an automatic error for the ALJ to consider his or her observations. In particular, the Regulations expressly provide that "observations by our employees and other persons" will be treated as evidence. 20 C.F.R. § 416.929(c)(3). In instances where the individual attends an administrative proceeding conducted by the adjudicator, the ALJ may "consider his or her own recorded observations of the individual as part of the overall valuation of credibility of the individual" claimant. *See Shaal v. Apfel*, 134 F.3d 496, 502 (2d Cir. 1998) (quoting SSR 96-7p, 61 Fed. Reg. 34483 at 34486, Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements (SSA 1996)); *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 643 (2d Cir. 1983) (citing *Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1982)) (noting that an ALJ's observations of the claimant sitting at the hearing without pain, being that of a lay person, is entitled to limited weight). The same rationale should apply in cases involving mental impairments. In the present case, Dr. Coleman opined that one of the startling components of Plaintiff's condition was his inability to express himself, and that this was a factor in his unemployability. Tr. at pp. 365 & 367. The ALJ could then consider the fact that Plaintiff expressed himself in a competent fashion at the hearing in determining credibility issues. Tr. at pp. 48-76. He could also consider the

field office disability report, which noted "Claimant was nice and cooperative. He answered all questions well and seemed to be able to recall dates and work history. Did have a little trouble processing some questions, but only a few." Tr. at p. 237.

There are, of course, significant limitations to these observations. For example, Dr. Coleman indicated that Plaintiff would have difficulty concentrating for periods of over two hours. Tr. at p. 370. The disability hearing lasted approximately one hour. Tr. at pp. 42 & 77. Therefore Plaintiff's concentration for that period of time is not inconsistent with Dr. Coleman's opinion. In addition, Dr. Coleman noted significant deficiencies in Plaintiff's short-term memory and reading ability, none of which were implicated by the hearing questions and responses. See Tr. at pp. 48-76 & 370.

Thus, if the ALJ were to utilize his observations as the sole basis for contradicting the opinion of Dr. Coleman, this would certainly have been error and unsupportable. However, the ALJ properly gave his observations only slight significance and primarily rested his conclusions upon the contradictory report of the state doctor and the fact that Plaintiff's prior activities were not consistent with the limitations expressed by Dr. Coleman. This conclusion was, in the Court's opinion, supported by the substantial evidence.

### G. Failure to Utilize a Vocational Expert

Plaintiff argues that the ALJ erred by failing to consult a vocational expert ("VE")

and relying instead on the Medical-Vocational Guidelines in 20 C.F.R. Pt. 404, Sub part P, App 2. Dkt. No. 12, Pl.'s Br., at pp. 21-22. If a claimant has non-exertional limitations that "significantly limit the range of work permitted by his external limitations[,]" then the ALJ is required to consult with a VE. *Bapp v.Bowen*, 802 F.2d 601, 605 (2d Cir. 1986). However, the mere existence of a non-exertional impairment does not automatically preclude reliance on the Grids. *Id*. at 603. A non-exertional impairment significantly limits a claimant's range of work when it causes an additional loss of work capacity beyond a negligible one. *Id*. at 605-06.

The ALJ found that Plaintiff's mental condition did not limit his ability to perform unskilled work, including carrying out simple instructions, dealing with work changes and responding to supervision. Tr. at p. 32. Thus, the non-exertional limits on Plaintiff did not result in any additional loss of work capacity, and the ALJ's use of the Grids, without reference to a VE, was appropriate. Tr. at p. 35; *see Zabula v. Asture*, 595 F.3d 402, 410-11 (2d Cir. 2010).

It appears that Plaintiff accepts this general framework, but urges that since the ALJ determined that Plaintiff was severely impaired by obesity, his physical limitation, combined with the mental limitations, required the use of a VE. Dkt. No. 12, Pl.'s Br., at pp. 21-22. The difficulty with this argument is that there is no evidence in the record of any physical limitation of the Plaintiff, and indeed his treating physician opined that

he had no such physical limitations. Tr. at pp. 320-29 & 358-62; *see Mancuso v. Astrue*, 361 Fed. App'x 176, 178 (2d Cir. 2010). The Appeals Council utilized this fact and modified the ALJ's decision, omitting obesity and high blood pressure as a severe impairment. Tr. at p.5. This lack of evidence of external limitations further validates the non-use of a VE. Accordingly, Plaintiff's argument in this regard is rejected.

## III. CONCLUSION

For the reasons stated herein, it is hereby

**ORDERED**, that the Commissioner's decision denying Supplemental Security Income is **AFFIRMED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order upon the parties to this action.

Date: October 26, 2015
      Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge